JASON M. FRIERSON
United States Attorney
Nevada Bar Number 7709
RICHARD ANTHONY LOPEZ
MINA CHANG
Assistant United States Attorneys
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Tel: 702.388.6336 / Fax: 702.388.6418
tony.lopez@usdoj.gov
mina.chang@usdoj.gov
*Attorneys for the United States*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SYLVIANE DELLA WHITMORE and<br><br>LARRY ANTHONY MCDANIEL,<br><br>Defendants. | Case No. 2:17-cr-00110-APG-CWH<br><br>**Government's Response to Defendants Whitmore and McDaniel's Joint Motion for New Trial Based Upon Newly Discovered Evidence and Supplements to Previously Submitted Motion for New Trial/Joinder [ECF No. 272]** |

Defendants Sylviane Della Whitmore and Larry Anthony McDaniel ask the Court to order a new trial based on two pieces of new evidence: (1) an anonymous letter containing a purported confession from the owner of 24/7 Private Vaults, Elliot Shaikin, who claims that he and co-defendant Phillip D. Hurbace – and not any other 24/7 employee – committed the 2012 robbery and 2014 burglary charged in this case; and (2) a tape recording of a phone conversion between McDaniel and Shaikin that purports to capture incriminating statements by Shaikin suggesting that he and Hurbace would soon rob 24/7. Neither the anonymous letter nor the Shaikin tape justify a new trial, as they are immaterial hearsay. Defendants likewise present no cognizable basis to disturb the jury's finding of guilt as to the money laundering counts. For the

reasons below, the government respectfully requests the Court to deny defendants' motion for a new trial.

## BACKGROUND

**A.    Procedural History**

On June 28, 2021, after evaluating the testimony of twenty-four witnesses and more than a thousand pages' worth of exhibits over the course of five days, a jury found defendants Whitmore and McDaniel guilty of all counts against them that were submitted to the jury:[1]

| Defendant | Count | Charge |
|---|---|---|
| Whitmore | One | Conspiracy to Commit Interference with Commerce by Robbery |
| | Two | Interference with Commerce by Robbery, Aiding and Abetting |
| | Six | Money Laundering |
| | Seven | Money Laundering |
| | Eight | Fraudulent Transfer of Stolen Property, Aiding and Abetting (Vacated) |
| | Twelve | Interstate Transportation of Stolen Property |
| | Twenty-Eight | Money Laundering |
| | Twenty-Nine | Money Laundering |
| | Thirty | Money Laundering |
| | Thirty-One | Money Laundering |
| | Thirty-Two | Money Laundering |
| McDaniel | Eight | Fraudulent Transfer of Stolen Property, Aiding and Abetting (Vacated) |
| | Nine | Interstate Transportation of Stolen Property |
| | Ten | Interstate Transportation of Stolen Property |
| | Thirteen | Money Laundering |
| | Fourteen | Money Laundering |
| | Fifteen | Money Laundering |
| | Sixteen | Money Laundering |
| | Seventeen | Money Laundering |
| | Eighteen | Money Laundering |
| | Nineteen | Money Laundering |
| | Twenty | Money Laundering |
| | Twenty-One | Money Laundering |
| | Twenty-Six | Money Laundering |
| | Twenty-Seven | Money Laundering |

---

[1] The government dismissed some counts prior to jury deliberations.

The three defendants unsuccessfully moved for a judgment of acquittal under Rule 29. ECF No. 218. On July 13, 2021, McDaniel refiled his brief in support of his Rule 29 motion but this time moved under Rule 33. ECF No. 230. Whitmore joined McDaniel's motion without additional argument about the counts pertinent to her. The Court granted their Rule 33 motion in part, finding insufficient evidence of Whitmore and McDaniel's knowledge of the pending bankruptcy as to Count Eight, Fraudulent Transfer of Stolen Property, Aiding and Abetting. ECF 247 (Mot. Hr'g Certified Tr. (Oct. 5, 2021)) at 32:3-11. The Court also permitted briefing on three matters: (1) the vacated Count Eight's effect on five of Whitmore's money laundering convictions (Counts Twenty-Eight through Thirty-Two); (2) an anonymous letter mailed to the Court after defendants' convictions purportedly exonerating Whitmore and McDaniel; and (3) a supplement by Whitmore in support of her Rule 33 motion, contingent on a written explanation for Whitmore's initial lack of fulsome briefing on the one that she had initially joined, *id.* at 7:23-8:10.

Defendants filed their Joint Motion for New Trial and Supplements to Previously Submitted Motion for New Trial/Joinder on April 15, 2022. For the reasons below, the government opposes their motion.

## LEGAL STANDARD

**A.     Motion for New Trial Based on Newly Discovered Evidence**

Motions for a new trial based on allegedly newly discovered evidence are disfavored and should be granted only in "exceptional cases" where the newly discovered evidence weighs heavily against the verdict. 3 Fed. Prac. & Proc. Crim. § 584 (4th ed.); *United States v. Chen,* 754 F.2d 817, 821 (9th Cir.), *cert. denied,* 471 U.S. 1139 (1985); *United States v. Orrock*, No. 2:16-cr-111-JAD-DJA, 2020 WL 376645, at *2 (D. Nev. Jan. 22, 2020) (denying Rule 33 motion).

3

Defendants cannot prevail on their Rule 33 motion unless they satisfy <u>every</u> element of a five-part test:

(1) the evidence must be newly discovered;

(2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part;

(3) the evidence must be material to the issues at trial;

(4) the evidence must be neither cumulative nor merely impeaching; and

(5) the evidence must indicate that a new trial would probably result in acquittal.

*See United States v. Harrington*, 410 F.3d 598 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 1080 (2006); *United States v. Walgren,* 885 F.2d 1417, 1428 (9th Cir. 1989); *Pitts v. United States*, 263 F.2d 808, 810 (9th Cir. 1959).

Defendants bear the burden of establishing the elements of this "exacting standard[]." 3 Fed. Prac. & Proc. Crim. § 584 (4th ed.); *United States v. Montano*, No. CR 18-123-BLG-SPW, 2020 WL 5977931, at *2 (D. Mont. Oct. 8, 2020).

**B.     Rule 33 Motion on Other Grounds**

A Rule 33 motion based on grounds other than newly discovered evidence "should be granted only in exceptional cases in which the evidence preponderates highly against the verdict." *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981) (citation omitted, emphasis added). Defendants bear the "high" burden of showing that "a serious miscarriage of justice may have occurred." *See United States v. Lowe*, No. 2:14-CR-0004-JAD-VCF, 2015 WL 2168852, at *2 (D. Nev. May 8, 2015), *aff'd*, 676 F. App'x 728 (9th Cir. 2017) (cautioning that the court "can only set aside the verdict if [it] conclude[s] that the evidence preponderates sufficiently heavy against the verdict that a serious miscarriage of justice may have occurred") (internal quotations

and citation omitted); *see also United States v. Endicott*, 869 F.2d 452, 454 (9th Cir. 1989) (noting standard and affirming denial of Rule 33 motion).

## ARGUMENT

**A.     Because the Anonymous Letter and the Shaikin Tape Are Inadmissible, They Are Immaterial and Irrelevant to the Outcome of the Trial.**

The Federal Rules of Evidence prohibit plain hearsay from being introduced at trial, *see* Fed. R. Evid. 802, rendering the contents of both the anonymous letter and the Shaikin tape immaterial because they would not have been admissible, *see Kind and Quality of Evidence Warranting New Trial*, 5 Orfield's Criminal Procedure Under the Federal Rules § 33:38 (June 2022) ("If the newly discovered evidence is merely hearsay, no new trial need be granted.")*; see also Wolcher v. United States*, 233 F.2d 748, 749 (9th Cir. 1956) (affirming denial of new trial based on inadmissible evidence); *Jeffries v. United States*, 215 F.2d 225, 226 (9th Cir. 1954) (affirming denial of motion for new trial, noting that the offered third party affidavit confessing and exculpating defendant would be inadmissible if the declarant were unavailable); *United States v. Montano*, No. CR 18-123-BLG-SPW, 2021 WL 1383150, at *2 (D. Mont. Oct. 8, 2020) (denying a new trial based on letters by third parties exculpating defendant because "[t]he statements are rank hearsay" and "[t]o satisfy the materiality prong, evidence must be both relevant and admissible") *affirmed by* 2022 WL 2288056, at *2 (9th Cir. June 24, 2022) ("The four letters he introduced in support of his motion are inadmissible hearsay and go only toward impeaching the two government witnesses.").

Defendants offer the entirety of the letter's unsigned cover sheet and the recording for the truth of the matter asserted without identifying any basis for establishing foundation or admission of the pure hearsay. *See United States v. Montano*, No. 21-30124, 2022 WL 2288056, at *2 (9th Cir. June 24, 2022) (affirming denial of motion for new trial based on letters presented to

5

court after conviction) ("The four letters he introduced in support of his motion are inadmissible hearsay"); *United States v. Mongkhonwitayakun*, 15 F.3d 1093 (9th Cir. 1994) (exclusion of letters was proper as inadmissible hearsay) ("Although Sukit may demonstrate the relevance of the Maliwan Letters, he has not demonstrated their admissibility under any exception to the hearsay rule."); *United States v. Sayakhom*, 186 F.3d 928, 937 (9th Cir.), *amended*, 197 F.3d 959 (9th Cir. 1999) (affirming denial of defendant's motion to admit recording) (Sayakhom thus proffered the tape to prove the truth of her statements to the investigators. The recording is hearsay.").

Defendants concede that the letter's handwritten notes attributed to Elliot Shaikin ("Shaikin statements") are hearsay but argue that they are admissible under the dying declaration exception.[2] ECF No. 272 at 14-15. However, this exception applies only to statements that relate to the cause of the declarant's imminent death in a homicide prosecution (or in a civil case). *See* Fed. R. Evid. 804(b)(2) ("In a prosecution for homicide or in a civil case, a statement that the declarant, while believing the declarant's death to be imminent, made about its cause or circumstances."). None of those conditions are present here. Of note, the House Committee Notes explain that the scope of Rule 804(b)(2) was narrowed due to the inherent

---

[2] While defendants did not raise this exception, the Shaikin statements also do not qualify as statements against interest. Assuming the statements were true, Shaikin recognized that he faced no consequences whatsoever for his deathbed assertions. *See* ECF No. 239 at 3 ("What can they do to me now?"). Unsurprisingly, this Court is not the first to have been presented with "evidence" of belated confessions after juries have handed down guilty verdicts. *See, e.g.*, *United States v. Parker*, 903 F.2d 91 (2d Cir. 1990) (denying motion for new trial, determining inmate's "new" statement exculpating co-conspirators did not subject him to further criminal liability and was inadmissible hearsay); *United States v. Angleton*, 269 F. Supp. 2d 878, 889 (S.D. Tex. 2003) (finding that suicide notes were not against the declarant's interest) ("Defendant's argument that the jail notes were written in the belief of imminent death is inconsistent with the argument that the notes are against penal interest."); *United States v. Crowder*, 848 F. Supp. 780, 782 (M.D. Tenn. 1994) (rejecting admission of confession by terminally ill declarant) ("It is likely that [the declarant] knew he would not live long enough to be held accountable either criminally or civilly as a result of his statements.").

unreliability of such "dying declarations." H.R. Rep. No. 93-650, at 15 (1973), *reprinted in* 1974 U.S.C.C.A.N. 7075, 7089 ("The Committee did not consider dying declarations as among the most reliable forms of hearsay. Consequently, it amended the provision to limit their admissibility in criminal cases to homicide prosecutions, where exceptional need for the evidence is present. This is existing law."); *see also Dying Declarations*, Trial Objections Handbook 2d § 4:64 ("The limitation apparently reflects a general distrust of dying declarations").

As for the Shaikin tape, defendants do not identify a theory of admissibility or authentication for this evidence. As an out of court statement, the recording qualifies as hearsay.

Because defendants' proffered evidence is inadmissible hearsay, they cannot satisfy the five-part test's requirements for materiality and probable acquittal. The Court can and should deny the motion on this ground alone.

**B.     Both the Anonymous Letter and the Shaikin Tape Also Fail the Remaining Prongs of the Rule 33 Analysis.**

Defendants also fail to meet the remaining requirements of the test. Not only is the evidence not "newly discovered," it is cumulative, merely impeaching, immaterial, and/or would not probably result in acquittal.

   1.     <u>The Shaikin Tape Was Not Newly Discovered, Was Not Belatedly Located Despite Due Diligence, and Would Not Probably Result in Acquittal.</u>

       a.     *Not "Newly Discovered"*

"One does not 'discover' evidence after trial that one was *aware* of prior to trial." *United States v. Owen*, 500 F.3d 83, 89-90 (2d Cir. 2007) (affirming denial of Rule 33 motion) (emphasis in original). To qualify as "newly discovered," it is not enough for a piece of evidence to have been obtained after trial; the court assesses whether its substance is newly discovered. *See United States v. Lockett*, 919 F.2d 585, 591-92 (9th Cir. 1990) (distinguishing between "newly discovered"

and "newly available" evidence); *see also United States v. Beier*, 780 F. App'x 460, 462 (9th Cir. 2019) (noting that evidence from post-trial competency hearing about a 1996 injury was not "newly discovered"); *United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005) (affirming denial of Rule 33 motion) ("The evidence of the officers' testimony at the preliminary hearing is not newly discovered, because Harrington was present at the preliminary hearing and his counsel obtained a cassette tape of that testimony during trial").

At best, defendants have only alleged that the recording, which has been in McDaniel's possession for the past 10 years, was newly obtained. According to McDaniel, while cleaning out his garage several months after trial, he serendipitously recovered a cassette tape onto which he had recorded an "unusual" phone call he had with Shaikin in 2012. ECF No. 272-4 at ¶ 3. But as a party to the taped conversation, McDaniel had always been aware of the call. *See id.* ("I have a vivid memory of that phone call because of its unusual nature.").

Apparently recognizing the exculpatory importance of his conversation after the 2012 robbery, McDaniel claims that he intended to present the recording to police detective Mitchell Dosch at his polygraph examination[3] in 2012 but that his mother told him she "threw all the tapes away." *Id.* at ¶ 4. McDaniel did not inform law enforcement at his examination (or at any time afterward) about his purported conversation with Shaikin nor did he or his attorneys inform the Court about the Shaikin tape. *United States v. Olson*, 995 F.2d 234 (9th Cir. 1993) (affirming denial of motion for new trial) ("The Olsons' failure to inform the district court before or at least during the trial that they were unable to locate such evidence indicates a lack of due diligence.").

At trial, McDaniel also had a constitutional right to testify about this phone call, but he

---

[3] Defendants also claim that an FBI Special Agent provided "grossly inaccurate and horribly misleading" testimony at trial, but they fall short of actually asserting a *Napue* claim. See ECF No. 272 at 16-22. To the extent that Whitmore takes issue with the agent's testimony, she was at liberty to take the stand to present her recollection of the events, or, as defendants concede, could have cross-examined the witness about the veracity of his statements.

elected not to exercise this right. *See United States v. Lockett*, 919 F.2d 585, 591 (9th Cir. 1990) (finding a post-conviction exculpatory affidavit offered by a non-testifying co-defendant was not newly discovered evidence). Because McDaniel was a party to the recorded conversation, the Shaikin tape's contents are not "newly discovered" for purposes of defendants' Rule 33 motion. *See United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005) (transcripts of officers' testimonies at preliminary hearing were not "newly discovered" where defendant was present at hearing); *United States v. Juan*, 990 F.2d 1263 (9th Cir. 1993) (affirming denial of defendant's motion for new trial) ("[T]he evidence is not newly discovered because Juan knew of these events before trial; he merely failed to inform his attorney of their existence."). The Ninth Circuit's decision in *United States v. My-Huong Thi Hoang*, 232 F. App'x 685 (9th Cir. 2007), is instructive here. In *My-Huong Thi Hoang*, the defendant moved for a new trial based on a contract that she "ultimately found in the garage of a family member." *Id.* at 687. The Ninth Circuit determined that this evidence "was not newly discovered" because, like McDaniel here, the defendant "know of its existence at" the time of trial. *Id.* "As such, the document was merely newly available."

    b.  *Failure to Demonstrate Due Diligence*

  Defendants similarly cannot demonstrate diligence in searching for the Shaikin tape, which they now assert "so undermine[s] the verdict that a new trial must be granted." ECF No. 272 at 36. Defendants describe in great detail the moment that the cassette tape was recovered, *see, e.g.*, ECF Nos. 272-4, ¶¶ 1-4; 272-3 (Zia Records surveillance video), but their efforts miss the mark. The only attempt that McDaniel made to locate the tape was to ask his mother, after which he "assumed the tape was no longer available." *Id.* at ¶ 4. The tape remained in McDaniel's possession for nearly 10 years, and McDaniel himself admits that it was from "pure happenstance" rather than any belated effort that he discovered the tape after his conviction. *Id.*

9

at ¶ 5.

Again, *My-Huong Thi Hoang* is on point. There, the defendant's claim that "she did 'everything in her power' to obtain the document at issue prior to trial," the Ninth Circuit concluded that the defendant did not "exercise diligence in obtaining the contract" because the contract was purportedly found in a family member's garage, the defendant was a party to the contract, and the defendant "was able to produce contemporaneous records and contracts with far less financial significance." 232 F. App'x at 687. Like the *My-Huong Thi Hoang* defendant was a party to the contract, McDaniel was a party to the conversation captured on the Shaikin tape and was in fact the creator of the tape. Similarly, McDaniel also was able to produce contemporaneous records with less significance, such as the photos he chose not to admit at trial. But in several ways, McDaniel has showed less diligence than the *My-Huong Thi Hoang* defendant. In contrast to that defendant, McDaniel admits he made no efforts to locate the tape, "assum[ing]" it was lost, and the tape was found in his own garage, not the garage of another person.

          c.      *Immaterial, Cumulative, and No Probable Acquittal*

The Court need not assess whether presentation of the recording at trial would have probably led to acquittal, because defendants have failed to show that the hearsay conversation recorded on the tape was "newly discovered" or belatedly located despite their due diligence. Nevertheless, it is evident that the tape offers only immaterial "evidence" with no bearing on the trial outcome. McDaniel's work schedule and availability on the night of the 2012 robbery is irrelevant—as his counsel repeatedly emphasized to the jury, McDaniel was not charged with committing the 2012 robbery (Counts One, Two). *See, e.g.*, ECF No. 215, June 21, 2021 Certified Trial Tr. at 19:19-24 ("[A]s the government told you, Mr. McDaniel, my client, Larry, has nothing to do, has not been charged, with the 2012 burglary [sic]. . . . With a line, cross out

10

Larry, anything you hear about 2012.").

Moreover, the Shaikin tape does nothing to exculpate Whitmore, who was charged with the robbery and convicted by the jury. She is not mentioned in the recording at all. "[T]o satisfy the [materiality] prong, the evidence must have a strong exculpatory connection to the charge against the defendant or totally undermine critical evidence." Montano, 2021 WL 1383150, at *2. But here there is nothing inconsistent about Whitmore's participation in the robbery and the contents of the Shaikin tape. Therefore, the tape would have no bearing on the trial outcome, let alone undermine it to the point of a probable acquittal.

Likewise cumulative are Shaikin's comments about 24/7 Private Vaults' clientele as dangerous but lacking recourse if they were to be victimized, *see*, *e.g.*, Testimony of Brian Shapiro, ECF No. 216, Tr. at 83:12-85:1 (eliciting testimony about an "air of criminality" and "air of anonymity"). The parties also presented extensive evidence that co-defendant Phillip Hurbace previously had broken into the vault boxes for cash and valuables. *See, e.g.*, Testimony of Francis Spotten, ECF No. 217, June 23, 2021 Certified Trial Tr. at 56:13-57:21 (relating how Shaikin fired Hurbace for "getting into those vaults" and that Hurbace "left mad at the owner, Elliot"). The recording provides no basis for disturbing the jury's well-deliberated verdicts.

  2. <u>The Anonymous Letter Is Equally Deficient Because It Is Neither Newly Discovered, Immaterial, and Would Not Probably Result in Acquittal.</u>

   a. *Not "Newly Discovered"*

Neither the letter's cover sheet nor the appended Shaikin statements are "newly discovered" for purposes of a Rule 33 motion because (1) the cover sheet was created after trial, and (2) prior to trial, defendants knew about the now raised third party culpability defense described in the Shakin statements.

The cover sheet, drafted after the anonymous writer learned of defendants' convictions, fails to qualify as "newly discovered" because it did not exist at the time of trial. *See United States v. Kauwe*, 59 F.3d 176 (9th Cir. 1995) (affirming denial of motion for a new trial based on evidence that did not exist at the time of trial).

Although defendants contend that the Shaikin statements are newly discovered, they also insist that both defendants knew about this alleged third-party culpability all along. A reading of defendants' motion makes clear that at heart, their motion is not based on "new evidence" but rather that their prior defense counsel was ineffective.[4] Defendants explain that it was defense counsel's strategic decision not to advance the theory that Shaikin had committed the 2012 and 2014 break-ins: McDaniel asserts that "[o]ver the course of trial preparation, [he] repeatedly emphasized to prior counsel that certain items strongly indicated Shaikin orchestrated both the 2012 and 2014 events. Previous counsel repeatedly rejected the notion owing to what he claimed was a lack of corroborating evidence." ECF No. 272-3 at ¶ 5. Whitmore affirmed in her declaration: "Although there was considerable evidence and information implicating Elliot Shaikin in the robbery of 2012, [defendants' attorneys] did not act on such information. . . . This was very frustrating to myself and Larry McDaniel. We want the facts as we known them to be heard."[5]

---

[4] As the Third Circuit explained in *United States v. DeRewal*, defendants' argument would be internally inconsistent: "[I]t seems clear that the type of evidence mentioned above (i.e., evidence that a reasonably competent attorney allegedly would have discovered by means of pretrial investigation) cannot constitute the newly discovered evidence on which a Rule 33 motion may be based. This is so because newly discovered evidence must be evidence that trial counsel could not have discovered with due diligence before trial." 10 F.3d 100, 104 (3d Cir. 1993).

[5] Defendants have waived attorney-client privilege over these discussions. *See Home Indemnity Corp. v. Lane Powell Moss and Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995) (holding that when claims put privileged information at issue, privilege is waived as to that information); *see also United States v. Lutz*, 103 F.3d 142 (9th Cir. 1996) (waiver of attorney-client privilege because defendant raised the issue of ineffectiveness of counsel); *Bittaker v. Woodford*, 331 F.3d 715, 718-19 (9th Cir. 2003) (same).

Accordingly, the Shaikin statements provide no new information that hadn't already been considered and rejected by the defense prior to trial. *See United States v. Caballero*, No. 3:15-CR-02738-BEN-1, 2017 WL 2212028, at *1 (S.D. Cal. May 19, 2017), *aff'd*, 745 F. App'x 32 (9th Cir. 2018) ("The supposed evidence hardly merits a new trial. In fact, the substance of the putative evidence was of such dubious quality that counsel wisely did not try to offer it to the jury."); *see also United States v. Hinkson*, 585 F.3d 1247, 1264 ("while newly written, [the newly provided affidavits] did not provide any new information that was not already considered and rejected from evidentiary admission by the court"); *see also United States v. Madrid*, No. CR1602180001TUCRMBGM, 2018 WL 10016780, at *3 (D. Ariz. June 25, 2018) (denying motion for new trial based on evidence supporting a third-party defense) ("Third-party culpability evidence was available at the time of Defendant's trial").

    b.  *Cumulative, Immaterial, and Unlikely to Result in Acquittal*

Furthermore, it is highly improbable that the letter would have resulted in acquittal. As an initial matter, the letter is inadmissible hearsay and never would have reached the jury.

Moreover, there is no indication that the jury would have believed its contents had this evidence been presented at trial. Defendants themselves elicited testimony that Shaikin was untrustworthy, *see, e.g.*, Test. of Bradley Burns, ECF No. 213, June 22, 2021 Certified Trial Tr. at 19:21-20:2 ("[Y]ou'll agree with me that he sold you a bill of goods? He made a bunch of misrepresentations to you?"), was forced to hand over his business to the government, *see, e.g.*, Test. of Brian Shapiro, ECF No. 213, June 22, 2021 Certified Trial Tr. at 71:2-9 ("It wasn't a friendly shutdown, but I shut it down. . . . [Shaikin] was not happy"), and terminated Hurbace from his employment on acrimonious terms, *see, e.g.*, Test. of Francis Spotten, ECF No. 217, June 23, 2021 Certified Trial Tr. at 51:2-4 ("I thought for sure Mr. Elliot was going to end up in a hospital because his blood pressure must have went sailing. He was just going off."). Much

more likely, the jury would have concluded that Shaikin was merely protecting McDaniel and Whitmore by denying their participation, spitefully inculpating Hurbace, and expressing general contempt over his failed business. *See* ECF No. 239 ("The customers are scum! . . . Police are stupid! . . . Fuck 24/7 and Shapiro"); *see also. Caballero*, 2017 WL 2212028, at *5, *aff'd*, 745 F. App'x 32 (9th Cir. 2018) ("Under the klieg lights of cross-examination, the transparent attempt at shifting responsibility away from Defendant that would be apparent to a jury if this 'evidence' were to be offered, would not likely lead to an acquittal.").

Because defendants have not met every single prong of the five-factor test, their motion based on "newly discovered" evidence must fail.

**C. The Newly Presented Evidence Highlights the Questionable Nature of Other "Evidence" That Defendants Chose Not to Introduce at Trial.**

The improbability of a different jury outcome is all the more strengthened by other "evidence" that defendants chose not to introduce at trial in 2021, but are now offered as "highly corroborative" of defendants' third-party culpability defense. Throughout the course of this case, defendants have purportedly unearthed evidence in peculiar circumstances, *see, e.g.*, Hill Declaration, ECF No. 272-2 at ¶ 4 (McDaniel's prior counsel came across a disk of exculpatory documents and photographs in the abandoned 24/7 Private Vaults business during a site visit nearly seven years ); ECF No. 239 (judge received an anonymous letter in the mail intended to exculpate McDaniel and Whitmore after they were convicted); ECF No. 272-4 at ¶ 6 (McDaniel found a flash drive in his garage containing scans of purportedly exculpatory documents); *id.* at ¶ 2 (record store employee returned to McDaniel a cassette tape placed in a DVD case containing a taped conversation with alleged perpetrator inculpating himself on the eve of the 2012 robbery); have provided unusual explanations for large cash transactions at issue, *see, e.g.*, Test. of David Hess, ECF No. 233, June 28, 2021 Certified Trial Tr. at 61:7-22; Test. of Mark

14

Whitmore, ECF No. 233, June 28, 2021 Certified Trial Tr. at 103:11-14 (Whitmore to receive $269,000 in cash from her father over nine years after father's death, of which the executor of his estate was wholly unaware); Test. of Michael Branham, ECF No. 216, June 22, 2021 Certified Trial Tr. at 149:22-150:2 (McDaniel recently finding his inheritance of nearly $400,000 in pillows and mattresses after his father passed away seven years prior); and offering documents of doubtful provenance from unavailable individuals, either deceased or unidentified, *see, e.g.*, ECF Nos. 272-3 at ¶ 7; 272-20 (Mormon man's document acknowledging receipt of $250,000 stolen but returned by Whitmore and Hurbace, including an illegible signature but lacking name of declarant); ECF No. 272-17 (photograph of declaration by now-deceased accountant Morris Golden), ECF No. 272-24 at 4 (undated article from an unnamed journal in Oklahoma, authored by an "Aaron Ketchel"); ECF Nos. 272-24 at 4, 272-25 (receipt for sale of Alfred McDaniel's violin in 1981 for $390,000, signed by Verna McDaniel rather than purported owner Alfred McDaniel, sold to a foreign collector from Dublin, Ireland named "Earle Kennedy"); ECF No. 239 (deathbed confession by Shaikin as to the 2012 and 2014 break-ins); and have presented documents with logically inconsistent purposes, *see, e.g.*, ECF No. 272 at 6 (anonymous sender of the letter "probably believed that the letter would be sufficient" to exonerate Whitmore and McDaniel, but chose not to do so until after their conviction, and had no previous intention of disclosing Shaikin's deathbed confession but kept it, as well as miscellaneous documents with Shaikin's handwriting, for seven years); ECF No. 272-4 at 2 (Verna McDaniel's name listed on 24/7 Private Vaults box contract, along with a signed document listing all of Verna McDaniel's supposedly stored assets, despite the business model of safeguarding the anonymity of customers). The "newly discovered" and "corroborating" evidence lack any indicia of reliability or trustworthiness.

The defense expended significant effort into locating the anonymous sender, evaluating Shaikin's handwriting, and confirming the audio integrity of the "newly discovered evidence." *See, e.g.*, ECF No. 272 at 7-8. However, they provide little to no external verification for the truth of the asserted statements. Defendants insist on the reliability of this evidence, but their reasoning is frequently based on circular logic. For example, defendants claim that the Shaikin statements were made "spontaneously 'in the final days before his death,'" ECF No. 272 at 4, but defendants' conclusion rests solely on the undated, non-notarized words provided by the declarant. ECF No. 272-8 at 2, 4.

Generously put, defendants' dubious "evidence" would not have altered the jury verdict. *See Caballero*, 2017 WL 2212028, at *1 ("The supposed evidence hardly merits a new trial. In fact, the substance of the putative evidence was of such dubious quality that counsel wisely did not try to offer it to the jury.").

**D.    Defendants Provide No Basis to Vacate the Jury's Verdict as to any Other Count.**

Defendants present no new arguments as to their Rule 33 motion based on the insufficiency of the evidence. Defendants reiterate that the government did not present direct evidence of Whitmore or McDaniel's involvement in the robbery or burglary. However, the law makes no distinction between the weight to be given to either direct or circumstantial evidence. *See United States v. Nelson*, 419 F.2d 1237, 1241 (9th Cir. 1969) (circumstantial and testimonial evidence indistinguishable insofar as fact-finding function is concerned).

Defendants also use the wrong standard to support their position that Whitmore's money laundering convictions (Counts Twenty-Eight through Thirty-Two) should be dismissed. ECF No. 272 at 35-36 (citing *Yates* and progeny involving "legally invalid" theories such constitutionality and statutory interpretation). "The precedent governing this case is not *Yates v. United States*, 354 U.S. 298, 77 S. Ct. 1064, 1 L.Ed.2d 1356, which invalidated a general verdict

when one of the possible bases of conviction was *legally* inadequate, but *Turner v. United States*, 396 U.S. 398, 420, 90 S. Ct. 642, 654, 24 L.Ed.2d 610, which upheld a general verdict when one of the possible bases of conviction was supported by inadequate evidence." *Griffin v. United States*, 502 U.S. 46, 46, 112 S. Ct. 466, 467, 116 L. Ed. 2d 371 (1991) (emphasis added) (explaining that jurors are not generally equipped to determine legal theories but are well equipped to determine whether a theory is factually supported); *cf. United States v. Gaitan-Ayala*, 454 F. App'x 538, 540 (9th Cir. 2010) ("If a conviction for one or more substantive crimes is overturned because of factual rather than legal insufficiency, but at least one substantive crime that is charged in the conspiracy has a sufficient factual basis, the conspiracy conviction must stand.").

Because the Court vacated Count Eight for factual insufficiency, the proper inquiry here is whether the government presented sufficient evidence to support a Hobbs Act robbery offense. *See* ECF No. 210 at 30 "("For Counts Twenty-Eight to Thirty-Two, the specified unlawful activity can be either Interference with Commerce by Robbery (Hobbs Act Robbery) as described in Count Two or Fraudulent Transfer of Property as described in Count Eight."). The court's reasoning in *Brennan v. United States* is instructive. 867 F.2d 111, 114–15 (2d Cir. 1989). At trial, the jury was instructed that in order to convict the defendant under the substantive RICO count, it would have to find that the defendant had committed at least one of certain enumerated offenses. *Id.* at 114. The jury's wire fraud convictions were subsequently vacated, and the defendant appealed his RICO conviction. The Second Circuit explained that had the invalid wire fraud counts been the only predicate acts supporting the RICO conviction, his RICO conviction would have been vacated. However, the defendant had been convicted of additional, separately charged crimes that the jury could rationally have concluded were predicate acts supporting the RICO conviction. *Id.* at 115 ("Brennan's argument is flawed. The fourteen Travel Act offenses

17

committed were not only possible predicate acts under Count One; they were also separately charged crimes, for all of which Brennan was convicted by this jury. Thus, we are not left to mere speculation as to the grounds for the substantive RICO conviction."). Likewise, because the jury could have (and did) conclude that Whitmore committed Hobbs Act robbery, defendants' challenge to the money laundering convictions (Counts Twenty-Eight through Thirty-Two) should be rejected.

Defendants also assert that Whitmore and McDaniel's convictions for Interstate Transportation of Stolen Property (Count Nine) should be vacated because they are "predicated on count 8," an "invalid theory." However, the jury convicted defendants of Interstate Transportation of Stolen Property based on elements unrelated to defendants' knowledge of bankruptcy proceedings. *See* Jury Instruction No. 20 ("The government need not prove who stole the money."). The trial evidence independently supported the jury's conclusion that the hundreds of thousands of dollars that Whitmore and McDaniel deposited after the 2014 break-ins were derived from criminal proceeds and not from their wages, mattresses and pillows, or inheritances. For instance, McDaniel deposited $387,200 in cash—more than seventeen times his below $34,000 per year average income—into a new account in his mother's name just days after the 2014 burglary had occurred. While defendants again insist that "nothing unusual" occurred during this transaction, it is evident that the jury remained unconvinced.

As in their original Rule 33 motion, defendants have not demonstrated how the evidence so preponderated against the jury's verdict as to grant a new trial on this count.

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

For the above-stated reasons, the United States respectfully requests the Court to dismiss defendants' motion.

DATED this 15th day of July, 2022.

                Respectfully submitted,

                            JASON M. FRIERSON
                            United States Attorney

                            */s/ Richard Anthony Lopez*
                            RICHARD ANTHONY LOPEZ
                            MINA CHANG
                            Assistant United States Attorneys