# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:17-cr-00110-APG-DJA |
| Plaintiff | **Order Denying Defendants' Motions for New Trial** |
| v. | [ECF Nos. 230, 272] |
| SYLVIANE DELLA WHITMORE and LARRY ANTHONY MCDANIEL, | |
| Defendants. | |

Defendants Sylviane Whitmore and Larry McDaniel are former employees of 24/7 Private Vaults (24/7), which was robbed in 2012, filed for bankruptcy in 2014, and was burgled shortly thereafter. Whitmore and Phillip Hurbace, a locksmith who did security work for 24/7, were convicted in this case on charges related the 2012 robbery. ECF Nos. 225; 227. Whitmore and McDaniel were convicted on charges related to the 2014 burglary. *Id.*; ECF No. 226.

McDaniel first moved for a new trial under Federal Rule of Criminal Procedure 33 based on insufficiency of the evidence, which Whitmore requested to join late without argument. ECF Nos. 230; 231. I granted a new trial on Count 8 (fraudulent transfer of property from a bankrupt estate) for both Whitmore and McDaniel, and on Counts 13-21, 26, and 27 (money laundering) for McDaniel. ECF No. 247 at 32. I also permitted supplemental briefing for the parties to address (1) the impact of vacating Count 8 on the remaining counts; and (2) an anonymous letter to the court enclosing the purported confession of Elliot Shaikin, the now-deceased owner of 24/7, taking responsibility along with Hurbace for the thefts. *Id.* at 37-38; ECF No. 239 at 3-4. Whitmore and McDaniel then jointly filed a second motion for new trial based on newly

1 discovered evidence, pointing to the alleged Shaikin confession and a taped phone call in which

2 they claim Shaikin made self-inculpatory statements to McDaniel. ECF No. 272.

3      Because there was sufficient evidence presented at trial to sustain the jury's verdict on

4 Counts 9, 10, 12, and 28-32, I deny the first motion for a new trial on those counts.  Because the

5 newly proffered evidence would not result in a probable acquittal, I also deny the second motion

6 for new trial.

7 **I.  Discussion**

8      Federal Rule of Criminal Procedure 33 allows a judge to "vacate any judgment and grant

9 a new trial if the interest of justice so requires."  A motion for new trial should be granted only

10 "in exceptional circumstances in which the evidence weighs heavily against the verdict." *United*

11 *States v. Del Toro-Barboza*, 673 F.3d 1136, 1153 (9th Cir. 2012).  When ruling on a new-trial

12 motion, I "need not view the evidence in the light most favorable to the verdict," and I may

13 "weigh the evidence and in so doing evaluate for [myself] the credibility of the witnesses."

14 *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992) (quotation omitted).  If I find that

15 "despite the abstract sufficiency of the evidence to sustain the verdict, the evidence

16 preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may

17 have occurred," I may "set aside the verdict, grant a new trial, and submit the issues for

18 determination by another jury." *Id.* at 1211-12 (quotation omitted).

19 **A.  Motion for a New Trial Based on Insufficiency of the Evidence (ECF No. 230)**

20      McDaniel's first motion for a new trial argued, among other things, that no evidence was

21 presented establishing he knew that 24/7 was subject to a bankruptcy proceeding at the time of

22 the 2014 theft. ECF No. 230 at 7-9.  Whitmore requested to join the motion one day after the

23 expiration of Federal Rule of Criminal Procedure 33(b)(2)'s 14-day time limit without briefing

1 how McDaniel's arguments applied to her separate convictions. ECF No. 231.  At a hearing, I

2 found there was not enough evidence showing either McDaniel or Whitmore knew 24/7 was in

3 bankruptcy as required to prove a violation of 18 U.S.C. § 152(7). ECF No. 247 at 31-32.  As a

4 result, I vacated the convictions on Count 8 for both Whitmore and McDaniel, and because

5 Count 8 was the predicate for McDaniel's money laundering charges, I also vacated his

6 convictions on Counts 13-21, 26, and 27. *Id.*  I permitted supplemental briefing on the impact of

7 my decision on the interstate transportation of stolen property counts and on Whitmore's money

8 laundering counts, provided she gave cause for her late joinder. *Id.* at 37-38.

9         1.   Interstate Transportation of Stolen Property—Counts 9, 10, and 12

10       In his supplement, McDaniel argues that the government relied on the now-vacated

11 Count 8 to prove he knew the cash at issue in Counts 9 and 10 was stolen, so his convictions on

12 those counts must also be vacated. ECF No. 272 at 32.  The government counters that it was not

13 required to prove who stole the cash in Counts 9 and 10, and that it presented enough

14 circumstantial evidence for the jury to find McDaniel knew the cash was stolen, including

15 evidence that he deposited hundreds of thousands of dollars into a new account in his mother's

16 name days after the 2014 burglary. ECF No. 284 at 18.

17       To find McDaniel guilty of interstate transportation of stolen property, the jury was

18 instructed that it must find beyond a reasonable doubt both that McDaniel transported stolen

19 property between states, and that he knew the property was stolen at the time of transport. ECF

20 210 at 24.  The jury was not required to find that McDaniel knew the property was stolen via a

21 specific type of theft.  By contrast, McDaniel's now-vacated money laundering charges required

22 the jury to find McDaniel laundered money that was criminally derived from the "specified

23 unlawful activity" in Count 8, which was fraudulent transfer of property from a bankrupt estate.

*Id.* at 29-31.  McDaniel's lack of knowledge that 24/7 was in bankruptcy proceedings thus affects the money laundering charges but does not impact his convictions for interstate transportation of stolen property.  There was sufficient evidence presented at trial for the jury to find McDaniel knew the cash in Counts 9 and 10 was stolen, including the timing of his large deposit days after the 2014 theft and his dubious explanations for the source of the deposit. *See* ECF No. 247 at 30-31.  Because the evidence does not preponderate heavily against the verdict in Counts 9 and 10, I deny the motion for new trial on those counts.

Whitmore did not justify her late joinder to McDaniel's motion.  Regardless, the same logic applies to her conviction for interstate transportation of stolen property in Count 12.  In her supplement, Whitmore argues that because the government attributed the source of the cash in Count 12 to the 2014 theft, my decision vacating her conviction on Count 8 necessitates a new trial on Count 12. ECF No. 272 at 35.  But her knowledge that the cash identified in Count 12 was stolen does not depend on her knowledge that 24/7 had filed for bankruptcy.  Furthermore, there was sufficient evidence presented at trial, including her dubious explanations for the source of the large cash deposits, for the jury to find Whitmore knew the cash was stolen. *See* ECF No. 233 at 103.  As a result, I deny the first motion for a new trial on Counts 9, 10, and 12.

### 2.   Money Laundering—Counts 28-32

Whitmore also argues her money laundering convictions must be vacated.  Unlike McDaniel, Whitmore was charged with laundering money criminally derived from the specified unlawful activity in either Count 2 (Hobbs Act Robbery related to the 2012 event) or Count 8 (theft from a bankrupt estate related to the 2014 event).  She argues that because we do not know which event the jurors selected as the predicate, and because a general verdict must be set aside

when it may be based on a legally inadequate ground, the court must vacate Counts 28-32. ECF No. 272 at 35-36 (citing *Yates v. United States*, 354 U.S. 298, 312 (1957)).

However, Count 8 was vacated for factual, not legal, insufficiency.  When a verdict is based on alternate grounds, all of which are legally adequate but one of which lacks sufficient evidentiary support, reversal is not required. *United States v. Gonzalez*, 906 F.3d 784, 790-91 (9th Cir. 2018) (citing *Griffin v. United States*, 502 U.S. 46, 49-50 (1991)).  In such a case, "we can be confident that the jury chose to rest its verdict on the [ground] that was supported by sufficient evidence, rather than the [ground] that was not." *Id.* at 791.  Because neither Count 2 nor Count 8 was legally deficient, and because there was adequate evidence to support a conviction on Count 2, reversal of Whitmore's money laundering convictions is not required. Furthermore, because the evidence does not preponderate heavily against the verdict in Counts 28-32, I deny the motion for new trial on those counts.

### B.  Motion for a New Trial Based on Newly Discovered Evidence (ECF No. 272)

After the trial, I received in the mail an anonymous letter enclosing an alleged confession by Elliot Shaikin, the former owner of 24/7 who died in 2014.[1] ECF No. 239.  Shaikin allegedly admits he committed both thefts with Hurbace. *Id*.  Whitmore and McDaniel's joint motion for a new trial relies on that purported confession and a taped conversation in which Shaikin makes apparently self-inculpatory statements to McDaniel. ECF No. 272  They also offer other pieces of evidence that they concede are not new but allegedly corroborate Shaikin's motive and means to commit the thefts, undermine the government's evidence at trial, and bolster their explanations

---

[1]The anonymous letter also included a photo of Shaikin and his wife, an invoice billed to 24/7 with unidentified handwriting, and an undated letter apparently signed by Shaikin regarding property he owned in California. ECF No. 239.

1  for the source of their large cash deposits.  Because most of this evidence is not new, and

2  because none of it would result in probable acquittal, I deny the motion.

3       To prevail on their motion for a new trial based on newly discovered evidence,

4  Whitmore and McDaniel must satisfy all prongs of a five-part test:

> (1) the evidence must be newly discovered; (2) the failure to discover the
> evidence sooner must not be the result of a lack of diligence on the defendant's
> part; (3) the evidence must be material to the issues at trial; (4) the evidence must
> be neither cumulative nor merely impeaching; and (5) the evidence must indicate
> that a new trial would probably result in acquittal.

8  *United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005) (quotation omitted).  I have broad

9  discretion in deciding whether new evidence is credible. *United States v. Panza*, 612 F.2d 432,

10  441 (9th Cir. 1979).

11       1.  The Alleged Shaikin Confession

12       Whitmore and McDaniel first argue that Shaikin's purported written confession is

13  authentic, bears sufficient indicia of reliability to be admissible under multiple hearsay

14  exceptions, and necessitates a new trial.  The confession would not be admissible under any of

15  their theories, but even assuming the confession is authentic and admissible, it is still outweighed

16  by the evidence at trial.  Because the confession would not result in a probable acquittal, I

17  address only that prong of the *Harrington* test.

18       *a.  Authenticity*

19       Whitmore and McDaniel argue that the documents enclosed with Shaikin's confession

20  corroborate the author's close relationship with Shaikin, and they submit an expert report

21  concluding the confession is in Shaikin's handwriting. ECF Nos. 272 at 6; 272-9 at 4.

22       As an initial matter, it is not clear that an invoice, an undated letter discussing property,

23  and a photo support the inference that the sender was close enough with Shaikin to be entrusted

with his deathbed confession.  Furthermore, the expert report concluding Shaikin wrote the

confession uses an unknown Shaikin writing sample as a known sample.  The report indicates it

relied on Item 5, which is a KLAS LLC invoice with unsigned, handwritten notes. ECF No. 272-

9 at 2, 15.  However, that document was provided to the court in the anonymous letter submitting

the confession, and it cannot be used as external verification of that confession. ECF No. 239 at

5.  I do not know whether the expert would reach the same conclusion without Item 5, but I am

concerned about the authenticity of the confession given both this oversight and the lack of

information surrounding its provenance.

### b.  Admissibility

Even assuming the confession is authentic, it is inadmissible hearsay.  Whitmore and

McDaniel argue the confession is admissible under three hearsay exceptions: (1) the statement

against interest exception in Federal Rule of Evidence 804(b)(3), (2) the residual exception in

Rule 807, or (3) what they call the "ends of justice" exception articulated in *Chambers v.

Mississippi*, 410 U.S. 284, 302 (1973).[2]

### i.   Rule 804(b)(3) – Statement Against Interest

The statement against interest exception in Rule 804(b)(3) provides that when a declarant

is unavailable as a witness, their prior statement will not be excluded as hearsay if the statement

(1) is one that a reasonable person would have made only if they believed it to be true because it

was greatly contrary to their interest when made, and (2) in a criminal case, is supported by

corroborating circumstances clearly indicating its trustworthiness. Fed. R. Evid. 804(b)(3).  The

---

[2]  The government has not had a chance to respond to these arguments because they were first raised in reply. ECF No. 296 at 4-10.  However, because my decision does not turn on the admissibility of the confession, and because no hearsay exception applies, no response was necessary.

1 rule "is founded on the commonsense notion that reasonable people . . . tend not to make self-

2 inculpatory statements unless they believe them to be true." *Williamson v. United States*, 512

3 U.S. 594, 599 (1994).

4      It is undisputed that Shaikin is unavailable.  Whitmore and McDaniel argue his

5 confession should be admissible because it could have exposed him to criminal liability and his

6 estate to civil liability. ECF No. 296 at 5-6.  However, this argument is contradicted both by their

7 prior assertion that the confession was made on his deathbed (and thus would not subject him to

8 criminal liability), and by Shaikin's purported confession itself, which asks "What can they do to

9 me now?" ECF Nos. 272 at 16; 239 at 3.  The statement against interest exception presumes that

10 a self-inculpatory statement is more likely to be truthful because it is said even in the face of

11 consequences.  A statement from a declarant who believes they are immune from any

12 consequences, as Shaikin purportedly believed, does not bear the same indicia of reliability.

13      Furthermore, the 1972 Advisory Committee Notes to Rule 804(b)(3) provide that

14 "[w]hether a statement is in fact against interest must be determined from the circumstances of

15 each case."  That is difficult to assess here, because it is unknown when and where the

16 confession was written, under what physical or mental conditions, and who else may have been

17 present.  Given Shaikin's apparent belief that he made his confession free from any consequence,

18 and given the complete lack of information regarding the circumstances of the confession, the

19 confession would not be admissible as a statement against interest.

20          ii.  Rule 807 – Residual Exception

21      Whitmore and McDaniel alternatively argue the confession would be admissible under

22 the residual exception in Rule 807. ECF No. 296 at 6-8.  Rule 807 permits admission of a

23 hearsay statement if it is "supported by sufficient guarantees of trustworthiness" considering

1 (1) the circumstances under which it was made, and (2) any evidence corroborating the

2 statement, so long as the statement is "more probative on the point for which it is offered than

3 any other evidence" the proponent can reasonably obtain.  It is designed for "exceptional

4 circumstances," and district courts generally have wide discretion in ruling on evidence under

5 Rule 807. *United States v. Bonds*, 608 F.3d 495, 500-01 (9th Cir. 2010) (quotation omitted).

6        Here, as discussed above, it is impossible to assess the circumstances under which the

7 confession was written.  Unlike the sworn, videotaped statements of deported eyewitnesses or

8 the taped police interview of a deceased witness, there is no evidence regarding Shaikin's

9 physical or mental condition or surroundings when he allegedly wrote the confession. *See United*

10 *States v. Sanchez-Lima*, 161 F.3d 545, 547 (9th Cir. 1998); *Harrington v. City of Redwood City*,

11 7 F. App'x 740, 742-43 (9th Cir. 2001).  Whether Shaikin was lucid, coerced, or even the author

12 of the confession, is unclear.

13       Whitmore and McDaniel nevertheless argue the confession is sufficiently corroborated

14 by: (1) anonymous Crime Stoppers tips, (2) information arising out of the 24/7 bankruptcy

15 proceeding, and (3) the tape of Shaikin's allegedly self-inculpating conversation with

16 McDaniel.[3]

17       The confession states, "Phil wants to call crime tip line and blame employees." ECF No.

18 239 at 4.  Whitmore and McDaniel argue the confession thus predicts and is corroborated by an

19 anonymous Crime Stoppers tip from 2015 accusing them of robbing 24/7 along with two others.

20 ECF Nos. 272 at 13-14; 272-32 at 2-3.  But there is no support for the inference that Hurbace

21

22

23

---

[3]  They also offer evidence either supporting their claims of innocence (e.g., that Whitmore passed her polygraph examination) or with unclear relation to the confession (e.g., that Shaikin had a connection to a Beverly Hills private vault). ECF No. 296 at 22-23.  Because that evidence does not provide external corroboration of the veracity of the confession, I do not address it.

was the caller.  In fact, one might suspect that if Hurbace had made the call, he would not have pointed the police to additional unknown participants for fear that it might draw unwanted attention to himself, given that he was 24/7's former locksmith and had been fired after being accused of theft.  Whitmore and McDaniel also argue a 2018 tip accusing Hurbace and three others of the 2012 theft corroborates the confession. ECF No. 272-33.  But aside from including Hurbace's name, nothing in the tip matches the details of the purported confession.

Whitmore and McDaniel next point to evidence from 24/7's bankruptcy proceeding to corroborate the confession's statement that Shaikin "lost too much money there." ECF No. 239 at 3.  Specifically, they point to his testimony that he advanced $2.3 million to the business and never made a profit. ECF No. 272 at 13.  While this offers some corroboration of the confession, it is also plausible that Shaikin was financially motivated to minimize his claimed profits and maximize his claimed loans to the business once it was in bankruptcy proceedings.

Finally, Whitmore and McDaniel point to a taped conversation they allege took place between Shaikin and McDaniel prior to the 2012 robbery, in which they claim Shaikin alludes to plans to rob 24/7 with Hurbace.  On the tape, a voice they allege is Shaikin's says, "think about the vaults, cash, gold, it's there and I came up with which boxes to go to, 30 boxes of ugly nasty customers without proof, without recourse of any type." ECF No. 272 at 9.  McDaniel explains that he tried to find the taped conversation before trial but only discovered it recently. ECF No. 272-4 at 1-2.  Whitmore and McDaniel also submit known Shaikin voice samples from discovery, along with a declaration from Walter Marin, the owner of Las Vegas Motion Pictures, stating that he did not observe any evidence of modifications on the tape. ECF Nos. 272-7; 274. Mr. Marin's qualification to determine evidence of modifications is unclear.  It is plausible that Shaikin is the speaker on the newly-proffered tape given the voice samples, but it is also

plausible that it is a different speaker, or that the tape was created from other recordings of his voice.  Given that McDaniel apparently never mentioned the call to police when he became a suspect, and given the lack of assurance that it is Shaikin's voice on the tape, it is dubious corroborative evidence.

As a result of the weak evidence corroborating the substance of the confession and the total lack of information regarding the circumstances under which it was written, the residual exception under Rule 807 does not permit its admission.

### iii.  "Ends of Justice" Exception

Whitmore and McDaniel finally argue the confession is admissible under the "ends of justice" exception articulated in *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).  This exception contemplates that "when a hearsay statement bears persuasive assurances of trustworthiness and is critical to the defense, the exclusion of that statement may rise to the level of a due process violation." *Chia v. Cambra*, 360 F.3d 997, 1003 (9th Cir. 2004).  In those circumstances the "hearsay rule may not be applied mechanistically to defeat the ends of justice." *Chambers*, 410 U.S. at 302.  However, the evidence must still have strong indicia of reliability. *Gable v. Williams*, 49 F.4th 1315, 1330 (9th Cir. 2022) (finding exclusion of another's confession violated the defendant's due process right where other man confessed multiple times, in several forms, to both witnesses and family, and confessions were corroborated by other evidence).  Given the lack of information surrounding the circumstances under which the confession was made and the limited corroborative evidence, it does not bear the necessary "persuasive assurances of trustworthiness" to satisfy this exception or any of the others the defendants raise.

////

1  / / / /

2              *c.  Probable Acquittal*

3          Assuming for the sake of argument that the purported confession is authentic and

4  admissible, it is outweighed by the evidence presented at trial and would not result in a probable

5  acquittal.  That evidence included testimony that Whitmore and McDaniel deposited hundreds of

6  thousands of dollars in cash after the thefts despite an apparent annual salary of at most $25,000.

7  ECF Nos. 217 at 81, 89, 106-07; 215 at 46-48, 51-53.  They deposited and withdrew these large

8  sums of money from accounts in their parents' names. ECF No. 217 at 86-87, 90-91, 115.  They

9  provided dubious explanations for the source of those deposits, including inheritances from

10  parents who died many years earlier. ECF Nos. 233 at 103; 217 at 108-09.  Whitmore admitted

11  to previously drilling boxes at 24/7, stealing money, and sharing it with McDaniel. ECF No. 214

12  at 30; 217 at 21-22.  The evidence indicated the perpetrators were likely insiders familiar with

13  24/7's security systems. ECF Nos. 215 at 80; 216 at 77; 217 at 47-48; 233 at 142.  In the face of

14  this evidence, the purported confession would not result in a probable acquittal and I deny the

15  motion for new trial on this ground.

16              2.  The Alleged Shaikin-McDaniel Tape

17          Whitmore and McDaniel also argue the taped conversation purportedly between

18  McDaniel and Shaikin is newly discovered evidence requiring a new trial. ECF No. 272 at 36.

19  As discussed above, the tape prompts the same concerns regarding dubious authenticity and

20  admissibility as the purported written confession.  It is not clear that it contains Shaikin's

21  unmodified voice, and there is not sufficient corroborating evidence to permit the tape's

22  admission. *See United States v. Wilkes*, 744 F.3d 1101, 1110 (9th Cir. 2014) ("Self-serving

23

12

1   declarations . . . are unlikely to persuade a jury.").  However, even assuming admissibility, the

2   tape fails on both the diligence and probable acquittal prongs of the *Harrington* test.

3          McDaniel states that he found the tape, which records a conversation he alleges took

4   place in 2012, after going through his garage in November 2021. ECF No. 272-4 at 1-2.  He

5   assumed it had been thrown away after asking his mother about it in 2012. *Id.* at 2. His

6   declaration does not indicate any efforts to search for the tape or to confirm it was thrown out,

7   even though he indicates his mother had dementia at the time that he asked her about it. *Id.*; ECF

8   No. 296 at 18.  The newly-proffered tape of a conversation that McDaniel knew existed and yet

9   did not thoroughly search his own property to discover is not the product of due diligence. *See*

10  *United States v. Lopez*, 803 F.2d 969, 977 (9th Cir. 1986) (defendant failed to establish due

11  diligence when the newly-proffered evidence was found on his business's property); *United*

12  *States v. My-Huong Thi Hoang*, 232 F. App'x 685, 687 (9th Cir. 2007) (defendant failed to

13  establish due diligence when she was a party to the newly-proffered contract that was found in a

14  family member's garage).

15         Whitmore and McDaniel similarly cannot establish the tape would result in a probable

16  acquittal.  They argue that its significance must be considered along with the purported

17  confession. ECF No. 296 at 17.  But even taken together with the confession, the tape is not

18  sufficient to overcome the evidence presented at trial.  As a result, I deny Whitmore and

19  McDaniel's motion for new trial on this ground.

20         3.   Other non-newly discovered evidence

21         McDaniel and Whitmore offer several other pieces of evidence that they concede are not

22  new but argue have new meaning given the purported confession and taped conversation.  This

23  includes Whitmore's declaration that FBI Special Agent McCamey presented false testimony,

1  evidence regarding Whitmore's explanation of a prior theft at 24/7, McDaniel's father's

2  testamentary documents, and a tax return apparently from Whitmore's mother's cigarette

3  business. ECF Nos. 272-3 at 1-2; 272 at 16-22, 27-29; 272-37.

4        As an initial matter, "[e]vidence will not be deemed 'newly discovered' simply because it

5  appears in a different light under a new theory.  A party who desires to present his case under a

6  different theory in which facts available at the original trial now first become important, will not

7  be granted a new trial." *United States v. Hamling*, 525 F.2d 758, 759 (9th Cir. 1975) (per curiam)

8  (simplified).

9        This evidence is neither new nor sufficient to warrant a new trial.  Whitmore was free to

10 cross examine Special Agent McCamey at trial, and while she may choose to make an ineffective

11 assistance of counsel claim, it does not warrant a new trial here. *See United States v. Hanoum*, 33

12 F.3d 1128, 1130-31 (9th Cir. 1994).  Furthermore, jurors apparently did not believe Whitmore

13 and McDaniel's explanations for the source of the large cash deposits, and the tax return and

14 testamentary documents do not resolve the oddities in their explanations.

15       In sum, Whitmore and McDaniel have not shown the evidence "preponderates

16 sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred."

17 *Alston*, 974 F.2d at 1211.  As a result, I deny their motion for a new trial based on newly

18 discovered evidence.

19 **II.  Conclusion**

20       I THEREFORE ORDER that defendant Larry McDaniel's first motion for new trial

21 (**ECF No. 230**) is **DENIED** as to Counts 9, 10, 12, and 28-32.

22 / / / /

23 / / / /

14

1 | / / / /

2      I FURTHER ORDER that defendant Larry McDaniel and Sylvia Whitmore's joint

3 | motion for new trial (**ECF No. 272**) is **DENIED**.

4      DATED this 22nd day of December, 2022.

5

6      _____
       ANDREW P. GORDON

7      UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23